UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
SHEILA ALLEN,

                        Plaintiff,                           **REPORT AND**
                                                             **RECOMMENDATION**
        -against-                                            CV 09-1520 (JFB)(ARL)

NASSAU COUNTY EXECUTIVE OFFICE,
THOMAS SUOZZI, MARY CURTIS, P.H.D.,
NASSAU COUNTY DISTRICT ATTORNEY'S
OFFICE, KATHLEEN RICE, TOWN OF OYSTER
BAY, JOHN VENDITTO, BRIDGETTE HAND,
JOE VISCONTI, NASSAU COUNTY DEPARTMENT
OF SOCIAL SERVICES, JOHN E. IMHOF,

                        Defendants.
-------------------------------------------------------------X

**LINDSAY, Magistrate Judge:**

        Before the court, on referral from District Judge Bianco, are the motions to dismiss of the

Town of Oyster Bay, John Venditto (Town Supervisor), Bridgette Hand and Joe Visconti (the

"Town defendants") and the Nassau County Executive Office, Thomas Suozzi (County

Executive), Mary Curtis (Deputy County Executive), the Nassau County District Attorney's

Office, Kathleen Rice (District Attorney), the Nassau County Department of Social Services, and

John Imhof (the "County defendants") pursuant to Federal Rule of Civil Procedure 12(b)(5),

12(b)(6) and/or 56.  For the reasons set forth herein, the court recommends that the defendants'

motions be granted, in part, and denied, in part.

## BACKGROUND

        The *pro se* plaintiff, Sheila Allen ("Allen"), commenced this action on April 10, 2009,

against Thomas Suozzi, Mary Curtis, Kathleen Rice, John Venditto, and John Imhof, alleging that

her rights had been violated under "Title VI - "Nondiscrimination in Federally assisted programs

Sec. 601." Allen claimed that the defendants had engaged in "selective prosecution, misconduct, malicious prosecution, defamation of character and improper procedures" when they failed to enter into a contract with her company New Life Business Institute and subjected her to a criminal investigation, causing her to be indicted on thirty-six felony counts and suffer ten million dollars in compensatory damages and ten million dollars in punitive damages. *See* Complaint. Allen was granted leave to proceed *in forma pauperis* and the U.S. Marshals served the defendants with the summons and complaint. Upon receipt, the defendants sought leave to move to dismiss.

On November 9, 2009, Judge Bianco held a pre-motion conference to address the defendants' motions, which resulted in Allen be granted leave to amend her complaint. On January 6, 2010, Allen filed an amended complaint which added the Town of Oyster Bay, Bridgette Hand, Joe Visconti, the Nassau County Executive Office, the Nassau County District Attorney's Office, and the Nassau County Department of Social Services as defendants. Allen also asserted new claims for breach of contract pursuant to 42 U.S.C. § 1981, conspiracy to interfere with civil rights under 42 U.S.C. § 1985, tortious interference with contractual relations under 42 U.S.C. § 1981, procedural due process under 42 U.S.C. § 1983, racial discrimination under 42 U.S.C. §§ 1981 and 1985, failure to prevent conspiratorial wrongs under 42 U.S.C. §§ 1985(3) and 1986, and abuse of power under 42 U.S.C. § 1983.

Before she filed the amended complaint, Allen had Sheila Williams serve it on the Nassau County Attorney's Office and the Town Attorney's Office by certified mail. *See* Doc. [17]. The copy mailed to the County Attorney's Office was received on January 4, 2010, but did not contain any exhibits or a summons.[1] Fernandez Aff. at ¶ 3. However, a week later, a summons was

---

[1]The Town defendants have not addressed this initial attempt at service.

prepared by the Clerk's Office and the U.S. Marshals served the papers on the defendants pursuant to Allen's *in forma pauperis* status.

In the Amended Complaint, Allen alleges that in May 2004, she founded New Life Business Institute, a business geared to help women and men start a new life through job placement, counseling, resume assistance, GED preparation, and job training. *See* Amended Complaint at ¶ 13.[2] Allen contends that in or around March 2005, she learned that Nassau County had 2.5 million dollars available to help low-income individuals receive assessment and training. *See id.* at ¶ 14. At the time, the money was being awarded to three entities, the Town of Oyster Bay Workforce and Development Department, Education Assistance Corp., and the Long Beach Adult Learning Center (referred to as the "three entities"), through no-bid contracts. *See id*. Allen challenged the no-bid process and was then informed that the contracts would be awarded through a competitive process. *See id.* at ¶ 15.

In March 2006, Allen was notified that her company New Life Institute would be added as a vendor. *See id*. For some unexplained reason, Allen assumed she would be awarded a $500,000 contract, but soon learned that she would only be awarded a $125,000 contract that required her to service mentally ill and substance abuse clients. *See id*. According to the plaintiff, the three entities that had serviced the County for twenty-five years were given an easier population to service. *See id*. Allen contends that despite her disappointment, she signed a contract with the County in September 2006 and started her software training with the Department of Social Services, expecting to receive a check for $30,000 as advance funding. *See id*.

---

[2]Allen notes that she was denied a business school license twenty-nine times. *See* Amended Complaint at ¶ 13.

According to Allen, after she was awarded the County contract, the three entities and the Town defendants began to harass her company, her employees, and her students because their funding had been reduced as a result of her companies inclusion as a vendor. *See id*. at ¶ 16. She also contends that the Town, the defendant Bridgette Hand ("Hand") and Joe Visconti ("Visconti"), Supervisors of the Workforce and Development Department, and the defendant John Venditto ("Venditto'), particularly harassed her in that they would no longer honor a separate pre-existing Town contract. [3] *See id*. Allen contends that the Town defendants forced former students to write complaints to the New York State Department of Education about her under the threat of losing their government benefits. *See id*. Allen asserts that the Town defendants violated her constitutional rights because she was African American. *Id*.

Allen also asserts that the Town defendants in conjunction with the Nassau County Department of Social Services, Commissioner John Imhof ("Imhof') and Deputy County Executive Mary Curtis ("Curtis') conspired to discredit her company by retraining her former students. *See id*. at ¶ 17. Imhof also allegedly advised her vendors not to honor their contracts with her company causing low income clients to avoid her school. *See id*. Allen asserts that their actions were done intentionally with "malice [and] defamation." *Id*.

In November 2006, Allen was informed by "one of [her] supporters" that her contract with the County had been suspended and that she was being referred to the District Attorney's Office by the defendant Curtis with instructions that the District Attorney "find something." *See id*. at ¶ 18. This action, Allen contends, was done because of her ethnic background. *Id*. Allen alleges

---

[3]Allen had contracts with the three entities to provide medical billing, medical assistance training, computer training and job placement. *See id*. at ¶ 16.

that under the direction of the defendant Thomas Suozzi ("Suozzi") and Curtis, the District Attorney's Office subpoenaed her business and personal acquaintances. *See id*. at ¶ 18. She contends that they also instructed the District Attorney to contact other government agencies and inform them not to do business with her. This was done, she says, before she was indicted or found guilty of any crime. *Id.* at ¶ *19.* She was also "lead to believe that her telephone lines were being monitored." *Id.* The defendant District Attorney Kathleen Rice, Allen argues, "defamed the name of Sheila Allen and any business entity created by Sheila Allen by using intentional false communication, . . . to harm [her] reputation, decrease the respect from others, which in turn left hostile, and/or disagreeable opinions or feelings against me as a person and as a business entity." *See id*. at ¶ 21. As a result, she was refused a loan and was unable to refinance her home. *Id.* Allen claims she then "realized she was being set-up . . . for fighting for equality in the no-bid contract process." *See id*. at ¶ 22.

That same month, November 2006, Allen was arrested and charged with eight felonies related to, among other thing, the receipt of unwarranted housing benefits and lying on an application to receive daycare benefits. *See id*. at ¶ 22. A year after her initial arrest, Allen was indicted on thirty-six felony counts. *Id.* Her husband was also arrested for lying on an application unrelated to her case. *Id.* Allen contends that her husband, who had previously been convicted of a felony, was arrested to force her to take a plea. *Id.* Records annexed to the County defendants' papers reflect that Allen eventually pled guilty to Grand Larceny in the 2nd Degree and Criminal Possession of a Forged Instrument. *See* Fernandez Aff. at Ex. B.[4] Allen asserts that she had proof

---

[4] Allen was sentenced to sixteen consecutive weekend incarcerations, one hundred hours of community service and five years probation on the Grand Larceny count and three years probation and restitution on the Criminal Possession of a Forged Instrument count. *See* Fernandez Aff. at Ex. B.

of her innocence, but her attorney "who was working with the district attorney" refused to present it. *Id.* Allen contends that "these . . . actions were retaliatory to not have to honor the [contract]," as evidenced by the fact that the other three vendors were not subjected to criminal investigation. *Id.*

In January 2009, Allen claims was forced to close the school, her car was repossessed, her property was put into foreclosure, she was unable to afford to pay for daycare, healthcare, and food for her children and her doctor, who was subpoenaed, refuses to treat her all due, she says, to "defamation of character, abuse of power, selective prosecution, malicious prosecution, racial discrimination, improper procedures and conspiracy." *See id.* at ¶ 23. Allen claims she has been deprived of "Life, Liberty and Property due to the intentional acts of all of the defendants," who have deprived her of her constitutional rights. *See id.* at ¶ 24.

In sum, Allen alleges that some or all of the defendants (1) failed to honor her contract because of her race and sex in violation of 42 U.S.C. § 1981, (2) engaged in a conspiracy to cancel the contract because she was African American in violation of 42 U.S.C. § 1985, (3) engaged in tortious interference with her contract in violation of 42 U.S.C. § 1981, (4) deprived her of due process when they refused to execute her contract, (5) deprived her of equal protection by violating her right to enforce the contract in violation of 42 U.S.C. § 1985 and 42 U.S.C. § 1981, (5) neglected to prevent conspiratorial wrongs in violation of 42 U.S.C. § 1986, and (5) abused power in violation of 42 U.S.C. § 1983.

The Town and County defendants now move to dismiss for insufficient service of process pursuant to Federal Rule of Civil Procedure 12(b)(5) and for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) or 56. The defendants' motions will be addressed together.

**DISCUSSION**

**A. Motions to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(5)**

"Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Dynegy Midstream Servs. v. Trammochem*, 45l F.3d 89, 94 (2d Cir. 2006); *see Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998) ("The requirement that jurisdiction be established as a threshold matter 'springs from the nature and limits of the judicial power of the United States' and 'is inflexible and without exception'"). In considering a Rule 12(b)(5) motion to dismiss for insufficient service of process, the court "must look to matters outside the complaint to determine whether it has jurisdiction." *Hertzner v. United States Postal Serv.*, 2007 U.S. Dist. LEXIS 19691 (E.D.N.Y. Mar. 20, 2007). "[W]hen a defendant moves to dismiss under rule 12(b)(5), the plaintiff bears the burden of proving adequate service." *Burda Media, Inc. v. Viertel*, 417 F.3d 292. 298-99 (2d Cir. 2005); *see also Schwasnick v. Fields,* 2010 U.S. Dist. LEXIS 65958 (E.D.N.Y. June 30, 2010).

      **(1)**      **Service upon the individual Town defendants.**

The Town defendants contend that Venditto, Hand and Visconti, who specifically were only sued in their individual capacities, were not personally served pursuant to Federal Rule of Civil Procedure 4. Service of process upon an individual within a judicial district of the United States is governed by Rule 4(e) which states that service may be completed by:

    (1)     following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or

    (2)     doing any of the following:

         (A)     delivering a copy of the summons and of the complaint to the individual personally;

      (B)      leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or

      (C)      delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e).   In this case, the applicable state law is governed by Section 308 of the New

York Civil Practice Law and Rules ("C.P.L.R.") which provides in pertinent part:

> Personal service upon a natural person shall be made by any of the following methods:
>
> 1.      by delivering the summons within the state to the person to be served; or
>
> 2.      by delivering the summons within the state to a person of suitable age and discretion at the actual place of business, dwelling place or usual place of abode of the person to be served and by either mailing the summons to the person to be served at his or her last known residence or by mailing the summons by first class mail to the person to be served at his or her actual place of business in an envelope bearing the legend "personal and confidential" and not indicating on the outside thereof, by return address or otherwise, that the communication is from an attorney or concerns an action against the person to be served, such delivery and mailing to be effected within twenty days of each other . . . .
>
> 3.      by delivering the summons within the state to the agent for service of the person to be served as designated under rule 318 . . . .
>
> 4.      where service under paragraphs one and two cannot be made with due diligence, by affixing the summons to the door of either the actual place of business, dwelling place or usual place of abode within the state of the person to be served and by either mailing the summons to such person at his or her last known residence or by mailing the summons by first class mail to the person to be served at his or her actual place of business in an envelope bearing the legend "personal and confidential" and not indicating on the outside thereof, by return address or otherwise, that the communication is from an attorney or concerns an action against the person to be served, such affixing and mailing to be effected within twenty days of each other . . . .
>
> 5.      in such manner as the court, upon motion without notice, directs, if service is impracticable under paragraphs one, two and four of this section.

C.P.L.R. § 308.

According to the Process Receipt and Returns filed by the U.S. Marshal, Bridgette Hand and Joseph Visconti were personally served with the summons and amended complaint on March 16, 2010. Hand and Visconti both argue that they were not personally served, but have not submitted any evidence to contradict the Process Receipt. Town Supervisor Venditto, however, was served by delivering a copy to Lorraine Haney, Assistant Town Attorney. Service on the Town Supervisor would have been sufficient under C.P.L.R. 308(2), if a copy had also been mailed to his actual place of business, but there is no indication that a follow-up mailing was done. *See Schwasnick v. Fields,* 2010 U.S. Dist. LEXIS at *6 (citing *Contento v. Veteren,* 1981 U.S. Dist LEXIS 13478 *3 (S.D.N.Y. Jul 13, 1981)(serving Town Clerk on behalf of Town Supervisor in his individual capacity insufficient because plaintiff did not mail copy after personal service); *see also Lange v. Town of Monroe*, 213 F. Supp 2d. 411, 421 (S.D.N.Y. 2002); *Wendell v. N.Y. State Ins. Dep't,* 2007 U.S. Dist. LEXIS 62314 *10-12 (E.D.N.Y. Aug. 23, 2007)(sufficiency of service on Superintendent in his individual capacity determined under Rule 4(e) and C.P.L. R. 308, in his official capacity under Rule 4(j)(2) and C.P.L.R. 307). Accordingly, without evidence indicating that the summons and amended complaint were also mailed, the court must recommend that the case be dismissed as against John Venditto.

(2) **Service upon the County defendants.**

The County defendants contend that service was insufficient because Allen's amended complaint was delivered to them by certified mail on January 4, 2010, without a summons or exhibits. The County defendants acknowledge that a new set of papers, including a summons, was delivered to the Office of the County Attorney on February 22, 2010, but they have not addressed the second service in this motion. *See* Cty Mem. at 2. The fact that Allen attempted to effectuate service on her own does not negate the fact that the U.S. Marshals served the papers six

weeks later. The court, therefore, looks to the Process Receipt and Returns prepared by the U.S. Marshals to determine if service on the County defendants was adequate.

Service of process upon a municipal office is governed by Federal Rule of Civil Procedure 4(j)(2) which states that service may be completed by: "(A) delivering a copy of the summons and the complaint to its chief executive officer; or (B) serving a copy of each in the manner prescribed by that state's law for serving a summons or like process on such a defendant." Fed. R. Civ. P. 4(j)(2). Under New York law, service upon the county departments requires the delivery of a copy of the summons to the chair or clerk of the board of supervisors, clerk, attorney or treasurer. C.P.L.R. §311(a)(4). According to the Process Receipt and Returns filed by the U.S. Marshal, the Nassau County Executive Office, the Nassau County Department of Social Services, and the Nassau County District Attorney's Office were served "c/o Donna A. Napolitano, Office of the Nassau County Attorney" on February 22, 2010. The process receipts further indicate that service was made to "Yoelle Desrose (sp.)", "a person of suitable age and discretion." Although "Yoelle's" title is not identified, the court can reasonably infer that she is an employee at the Nassau County Attorney's Office. Allen has, therefore, complied with C.P.L.R. §311(a)(4) with respect to the County departments and offices named in the complaint.

Mary Curtis and Kathleen Rice were also served at the County Attorney's Office by service on "Yoelle Derose," but this service is insufficient. Curtis and Rice have only been named in their individual capacities. *See* Amended Complaint at ¶¶ 4, 12. Fed. R. Civ. P. 4(e) and C.P.L.R 308 govern personal service and have not been satisfied. Accordingly, the court also recommends that the case be dismissed against Curtis and Rice pursuant to Fed. R. Civ. P. 12(b)(5).

Finally, it appears that service is also defective with respect to Thomas Suozzi and John

Imhof. The process receipt for Suozzi indicates that he was served at 1550 Franklin Avenue, Mineola, NY, which the court notes is the address for the County Executive, but other than indicating that there is "legal evidence of service," the receipt does not indicate how Suozzi was served. The court cannot presume that he was personally served. Similarly, the process receipt for Imhof indicates that service was made at 60 Charles Lindbergh Blvd, Uniondale, NY, which is the address of the Nassau County Department of Social Services, but again it does not indicate that manner of service or identify "Audrey Mikell" the purported recipient of the summons and amended complaint. Further, even though Suozzi and Imhof appear to have been served at their actual places of business, there is no indication that there was a subsequent mailing pursuant to C.P.L.R. 308(2). Accordingly, the court recommends that the case also be dismissed against Suozzi and Imhof pursuant to Fed. R. Civ. P. 12(b)(5).

In sum, the court finds that there was adequate service with respect to the Town of Oyster Bay[5], Bridgette Hand, Joe Visconti, the Nassau County Executive Office, the Nassau County Department of Social Services, and the Nassau County District Attorney's Office. The court, however, recommends that the case be dismissed against John Venditto, Mary Curtis, Kathleen Rice, Thomas Suozzi, and John Imhof for improper service pursuant to Fed. R. Civ. P. 12(b)(5).

**B. Permission to Amend the Complaint**

The Town defendants argue that the amended complaint improperly added the defendants Hand and Visconti without permission of the court. At the November 9th conference, Judge Bianco granted Allen leave to amend her complaint. The Town defendants contend the purpose of the ruling was to provide Allen with an opportunity to provide more detailed information

_____

[5]The Town defendants acknowledge that the Town of Oyster Bay was properly served.

regarding her claim.  *See* Underwood Aff. at ¶4.  However, there is no indication in the record that Judge Bianco expressly prohibited the joinder of new parties.  Rule 20(a) governs the joinder of parties and has two distinct requirements.  First, "a right to relief must be asserted . . . relating to or arising out of the same transaction or occurrence."  *See McNaughton v. Merck & Co.,* 2004 U.S. Dist. LEXIS 30287 * 3 (S.D.N.Y. Dec. 17, 2004).  Second, "there must be some question of law or fact common to all plaintiffs." *Id*.  Here, the Rule 20(a) standards have been met and the court finds that Allen was not barred from naming Hand and Visconti as defendants.

## C.  The Nassau County Departments

The County defendants contend that the complaint must be dismissed as to the Nassau County Executive Office, the Nassau County District Attorney's Office, and the Nassau County Department of Social Services in that they are all administrative arms of the County of Nassau, and thus "non-sueable."  The court agrees.  In *Jackson v. Nassau County,* 2010 U.S. Dist LEXIS 5344 *16 (E.D.N.Y. Jan. 22, 2010)(JFB), the court dismissed a *pro se* plaintiff's causes of action against the Nassau County Police Department and Nassau County District Attorney's Office.  The *Jackson* court found that "'under New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and, therefore, cannot sue or be sued.'" *Jackson,* 2010 U.S. Dist LEXIS at *16 (citing *Davis v. Lynbrook Police Dep't*, 224 F. Supp. 2d 463, 477 (E.D.N.Y. 2002)).  Accordingly, the undersigned recommends that the claims be dismissed against the Nassau County Executive Office, the Nassau County District Attorney's Office, and the Nassau County Department of Social Services and that the County of Nassau, which has not been named, be substituted as the correct party in interest.

**D.    Motions Pursuant to Fed. R. Civ. P. 12(b)(6)**

**1.  The Remaining Defendants.**

In her Amended Complaint, Allen asserted seven causes of action and each cause of action is asserted against a unique combination of defendants.  Given the undersigned's Rule 12(b)(5) determination regarding John Venditto, Mary Curtis, Kathleen Rice, Thomas Suozzi, and John Imhof, the court will not be addressing the following claims:

> 1.  The Section 1981 claim for breach of contract asserted against Suozzi, Curtis, Imhof and Venditto (*see* Amended Complaint at ¶¶ 25-35) ;
>
> 2.  The Section 1985 claim alleging conspiracy to interfere with civil rights asserted against Suozzi, Curtis, Imhof and Rice (*see* Amended Complaint at ¶¶ 36-41);
>
> 3.  The Section 1981 claim for tortious interference with contractual relations asserted against Suozzi, Curtis, Imhof and Rice (*see* Amended Complaint at ¶¶ 42-46)[6];
>
> 4.  The Section 1983 procedural due process claim asserted against Suozzi, Curtis, Imhof and Rice (*see* Amended Complaint at ¶¶ 47-49);
>
> 5.  The Section 1981 and 1985 racial discrimination claim asserted against Suozzi, Curtis, Imhof and Rice (*see* Amended Complaint at ¶¶ 50-54);
>
> 6.  The Section 1985 and 1986 claim for neglecting to prevent conspiratorial wrong asserted against Rice (*see* Amended Complaint at ¶¶ 55-57); and
>
> 7. The Section 1983 abuse of power claim asserted against Rice (*see* Amended Complaint at ¶¶ 58-65).

*See Arrowsmith v. United Press Int'l*, 320 F.2d 219, 221 (2d Cir. 1963)( "[A] court without . . .

---

[6]The court notes the Amended Complaint filed with the court is missing page 20.  A complete version is annexed to the Fernandez Affidavit.

[personal] jurisdiction lacks power to dismiss a complaint for failure to state a claim ").[7] The court will, however, address the 12(b)(6) claims asserted against the Town, Hand and Visconti, as well as against the County of Nassau, should the court adopt the recommendation with respect to the administrative entities.

### 2. Fed. R. Civ. P. 12(b)(6) Standards.

In its recent decisions, the Supreme Court has stated that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"*Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly,* 550 U.S. at 570). Although for the purposes of a motion to dismiss the court must accept as true the factual allegations in the complaint, it is not "bound to accept as true a legal conclusion couched as a factual allegation," *Iqbal,* 129 S. Ct. at 1949-50, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949. The court must "determine whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'" *Hayden v. Paterson,* 594 F.3d 150, 161 (2d Cir. 2010) (quoting *Iqbal,* 129 S. Ct. at 1950). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal,* 129 S. Ct. at 1949 (internal quotation marks and

---

[7]The County defendants have devoted a substantial portion of their memorandum to a discussion of Allen's Section 1983 and 1986 claims. Allen asserted a Section 1983 claim against Suozzi, Curtis and Imhof for violating her right to due process (fourth claim) and against Rice for abuse of process (seventh claim). The Section 1986 claim is only asserted against Rice for "neglecting to prevent conspiratorial wrong" (sixth claim). Given that the court's Rule 12(b)(5) ruling, the defendants' arguments with respect to these claims are inapplicable. In addition, the County has included a separate section addressing the Equal Protection Clause. Allen's Equal Protection claim is encompassed by her Section 1981 claim, s*ee* Amended Complaint at ¶¶ 1, 51, 52, and the arguments will analyzed under Section 1981.

citations omitted); *see also Twombly,* 550 U.S. at 570 (noting that a complaint must be dismissed where a plaintiff has not "nudged [his] claims across the line from conceivable to plausible"). Determining whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 129 S. Ct. at 1950.

"The task of a court in ruling on a motion to dismiss is to 'assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" *Fowler v. Scores Holding Co.,* 677 F. Supp. 2d 673, 678 (S.D.N.Y. 2009) (quoting *In re Initial Pub. Offering Sec. Litig.,* 383 F. Supp. 2d 566, 574 (S.D.N.Y.2005)). To defeat a Rule 12(b)(6) motion to dismiss, the complaint need not contain specific facts establishing a prima facie case of discrimination, but the claim "must be facially plausible and must give fair notice to the defendants of the basis for the claim." *Morales v. Long Island R.R. Co.,* 2010 WL 1948606, at *3 (S.D.N.Y. May 14, 2010); *see also Fowler,* 677 F. Supp. 2d at 679. "Even after *Twombly,* though, we remain obligated to construe a *pro se* complaint liberally." *Harris v. Mills,* 572 F.3d 66, 72 (2d Cir. 2009). The court addresses the remaining claims with these standards in mind.

### 3. The Section 1981 claims.

In her first and fifth causes of action**,** Allen contends that the defendants, the County of Nassau, the Town of Oyster Bay, Hand and Visconti violated 42 U.S.C. § 1981 in that they failed to honor her contracts because of her sex[8] and her African American decent. Section 1981

---

[8]Allen's passing reference to sex discrimination is set forth at paragraph 26 of the amended complaint which arises in the context of her Section 1981 claim. Section 1981 does not support a sex discrimination claim. Moreover, the amended complaint is devoid of any specific

provides that:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981. "To establish a claim under 42 U.S.C. § 1981, plaintiffs must allege facts supporting the following elements: (1) plaintiffs are members of a racial minority; (2) defendants' intent to discriminate on the basis of race; and (3) discrimination concerning one of the statute's enumerated activities." *Brown v. City of Oneonta*, 221 F.3d 329, 339 (2d Cir. 2000) (citing *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993)).

   As a threshold matter, "Section 1983 provides the exclusive remedy for violation of rights guaranteed under § 1981 in a claim against a state actor." *Gladwin v. Pozzi,* 2010 U.S. Dist LEXIS 5091 *16-17 (S.D.N.Y. Dec. 10, 2010), *aff'd* 2010 U.S. App. LEXIS 25919 (2d Cir. Dec. 20, 2010). As such, Section 1981 claims asserting vicarious liability against municipalities must be analyzed in accordance with the principles laid down in *Monell v. New York City Dep't of Soc. Servs.,* 436 U.S. 658, 694 (1978)." *Burke v. Deer-Park Union Free School Dist.,* 2011 U.S. Dist. LEXIS 10629 *14 (E.D.N.Y. Feb. 3, 2011). Under *Monell,* a municipality can only be held liable if "its policy or custom, whether by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the complained injury." *Monell,* 436 U.S. at 694. Where such a claim is made, the plaintiff must allege facts showing that the official " had final policy

---

allegations with respect to gender discrimination. Although the reference may have been included in error, to the extent it was intentional, it should be dismissed as wholly lacking in any factual support.

making authority in the particular area involved. *Id.* Here, Allen has not alleged a policy or custom to discriminate against African Americans with respect to contract rights, nor has she asserted that Hand or Visconti, who have been sued in their individual rather than official capacities, were policy-makers acting on behalf of the Town. Accordingly, there is no basis for a *Monell* claim, and thus, the court recommends that the Section 1981 claim against the Town and the County be dismissed.

Hand and Visconti urge the court to dismiss the complaint on the ground that they are entitled to absolute and/or qualified immunity regarding any contracts Allen had with the Town. "Absolute immunity is accorded to judges and prosecutors functioning in their individual capacities and, under certain circumstances, is also extended to officials of government agencies 'performing certain functions analogous to those of a prosecutor' or judge." *Wetzel v. Town of Orangetown,* 2010 U.S. Dist. LEXIS 19260 *7 (Mar. 2, 2010). The nature of the alleged action is not functionally comparable to that of a judge or prosecutor, and thus, does not give rise to absolute immunity. *Id.* Qualified immunity, does, however, provide protection to government officials in the exercise of their duties. *See id.* The doctrine of qualified immunity is intended to strike a balance "between the need, on the one hand, to hold responsible public officials exercising their power in a wholly unjustified manner and, on the other hand, to shield officials responsibly attempting to perform public duties in good faith from having to explain their actions to the satisfaction of the jury." *Locurto v. Safir*, 264 F.3d 154, 162-63 (2d Cir. 2001). "A government official is entitled to qualified immunity 'if it was objectively reasonable for the [official] to believe that his conduct did not violate" a "constitutional right." Norton v. Town of Islip, 2010 U.S. App. LEXIS 10576 * 8 (2d Cir. May 25, 2010)(citing *Harrow v. Fitzgerald,* 257

U.S. 800, 818 (1982)).

Here, the court does not have sufficient facts before it to determine whether Hand or Visconti's conduct was objectively reasonable. According to the complaint, after Allen was awarded the County contract, Hand and Visconti began to harass her and would not longer honor the active contract for services she had with the Workforce and Development Department. *See* Amended Complaint at ¶ 16. Allen contends that this was done because an African American was enjoying the same benefits as Caucasian vendors, including their Department. Although the court notes that Allen's arrest which occurred two months after she was awarded the contract may well have been the cause of the alleged actions, the Town's failure to raise this or address the reasonableness of their conduct prevents the court from resolving this issue.

Thus, the court turns to the allegations supporting the Section 1981 claim. Read liberally, Allen claims that she was the victim of race discrimination in violation of Section 1981 in that the defendants failed to honor her signed contracts, breached their obligation to pay the sum promised by the contracts, and failed to negotiate in good faith, with discriminatory animus because she was an African American and the three entities that had no-bid contracts were of Caucasian decent. The Town defendants contend that Allen's allegation are insufficient to state a claim under section 1981 because the amended complaint does not include any allegations that the defendants intentionally discriminated against her beyond conclusory allegations. *See* Underwood Aff. at ¶¶ 5-8; Cty. Mem. at 6-7.[9] The court disagrees.

In *Boykin v. KeyCorp,* 521 F.3d 202 (2d Cir. 2008), the Second Circuit reversed the

---

[9]The County defendants argument is set forth in response to what it perceived to be a Title VII and Fourteen Amendment Equal Protection claim.

district court's dismissal of a Title VII case against KeyBank for its denial of plaintiff's loan application. The district court had found that "[i]t [was] not enough for Plaintiff to simply state that she is a black woman who was denied a loan.'" 521 F.3d at 214 (quoting *Boykin,* 2005 WL 711891, at *4). The Second Circuit disagreed with the trial court's conclusion holding that complaints of racial discrimination are "sufficiently pleaded when the complaint state[s] simply that plaintiffs 'are African-Americans, describes defendants' actions in detail, and alleges that defendants selected [plaintiffs] for maltreatment 'solely because of their color.'" *Boykin,* 521 F.3d at 215 (citing *Phillip v. Univ. of Rochester,* 316 F.3d 291, 298 (2d Cir. 2003)). Following *Boykin,* the Southern District concluded "[a] complaint that contains specific factual allegations as to events leading up to an adverse action, accompanied by conclusory allegations of discriminatory intent, suffices to state a discrimination claim." *Morales v. Long Island R.R. Co.,* 2010 U.S. Dist. LEXIS 47926 at *3 (S.D.N.Y. May 14, 2010) (citing *Boykin,* 521 F.3d at 214-15). Guided by *Boykin*, the court finds that the facts alleged create an inference that the action taken by the defendants was based on her race, and thus, are sufficient to state a plausible claim for relief.

In summary, the court recommends that County defendants' motion to dismiss the Section 1981 claim be granted. The further recommends that the Town's motion to dismiss the Section 1981 claim be granted with respect to the Town of Oyster Bay, but denied with respect to Hand and Visconti.

### 4. Title VI claims

Allen refers to Title VI in both her jurisdiction section and the first cause of action under Section 1981. It is not at all clear to the court whether Allen intended to assert a separate Title VI claim or if it was intended to be part and parcel of her Section 1981 claim. However, the court

will briefly address the statute given Allen's *pro se* status.

Title VI provides that "no person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. 2000(d). The County defendants urge the court to dismiss the Title VI claim, arguing that the complaint contains only conclusory allegations of discrimination that do not give rise to a Section 1983 claim. Although this specific argument must fail for the same reasons set forth above, Allen has not identified any federally funded program or activity that subjected her to discrimination. While the court assumes that she is referring to the $2.5 million available for low income individuals, "Title VI covers only discrimination claims brought by a "beneficiary" that is 'where federal funding is given to a non-federal entity which, in turn, provides financial assistance to the ultimate beneficiary.'" *McKnight v. Middleton*, 699 F. Supp. 2d 507, 522 (E.D.N.Y. 2010)(citing *Koumantaros v. City Univ. Of New York,* 2007 U.S. Dist. LEXIS 19530 * 7 (S.D.N.Y. Mar. 19 2007)). Allen has acknowledged that low income individuals needing assessment and training are the ultimate beneficiaries of the "program." Consequently, even if the source of the funds at issue in this lawsuit is a federally funded program, this claim must be dismissed as Allen is not the intended beneficiary. Accordingly, the court recommends that the Title VI claim be dismissed.

**5. The Section 1985 claims.**

In her second and fifth causes of action**,** Allen contends that the defendants violated 42 U.S.C. § 1985 in that they conspired to interfere with her contracts, coerced Kathleen Rice to start a criminal investigation to "find something" so that they could cancel her contract, and convinced others to write complaints about her because she was African American. Section 1985 provides

20

that:

> If two or more persons in any State . . . conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws . . . the person so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42. U.S.C. § 1985(3). To allege a violation, a plaintiff must claim: (1) a conspiracy; (2) for the purpose of depriving any person or class of persons equal protection of the laws; and (3) an act in furtherance of conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a U.S. citizen. *See Emmons v. City University of New York,* 715 F. Supp. 2d 394 (E.D.N.Y. Jun. 2 2010).[10] "[A] §1985(3) violation must be motivated by some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirator's action." *Id.* at 416 (citing *Griffin v. Breckenridge,* 403 U.S. 88, 102 (1971)). "In other word, the intended victims must be victims not because of any malice the conspirators have toward them, but because of their membership in or affiliation with a particular class." *Id.*

Moreover, to survive a motion to dismiss, a plaintiff must set forth "specific factual allegations" regarding the conspiracy. *Vertical Broadcasting, Inc. V. Town of Southampton,* 84 F. Supp. 2d 379, 389-90 (E.D.N.Y. 2000). The plaintiff "must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Webb v. Goord,* 340 F.3d 105, 110 (2d Cir. 2003). The

---

[10]Similarly, "[t]o establish a conspiracy claim under section 1983, a plaintiff must demonstrate (1) the existence of an agreement; (2) to act in concert to inflict an unconstitutional injury; (3) an overt act done in furtherance of that agreement; and (4) damages resulting therefrom." *Muzio v. Inc. Vil. of Bayville,* 2006 U.S. Dist. LEXIS *18. Moreover, "[c]laims alleging conspiracies to violate civil rights are held to a heightened pleading standard." *Brewster v. Nassau County,* 349 F. Supp. 2d 540, 547 (E.D.N.Y. 1994).

defendants urge the Court to dismiss the plaintiffs' claims under Section 1985 because (1) the amended complaint fails allege a legal or factual basis upon which a claim for conspiracy would be cognizable; and (2) the "intra-corporate conspiracy doctrine" bars any such claim.

Here, Allen alleges that "the [d]efendants successfully conspired to interfere with [her] civil rights by coercing to cancel New Life Business Institute and Sheila Allen's executed contract for training and assessment services with Nassau County" "because [she] was an African American women" and in the past, they were only required to deal with Caucasian-owned training institutions. *See* Amended Complaint at ¶¶ 36-39, 53. Allen further asserts that she was not given the same chance to participate in the contract as were her Caucasian opponents. *Id.* In addition, Allen asserts several allegations regarding the "meeting of the minds," including:

> (1) Suozzi, Curtis, Imhof conspired with the Nassau County District Attorney's Office and Rice to start a criminal investigation to find something as part of a larger agenda, *see* Amended Complaint at ¶ 38;
>
> (2) the Town, Hand and Visconti conspired with Imhof and the Department of Social Services to have students write bogus complaints, *see* Amended Complaint at ¶ 39;
>
> (3) the Nassau County Executive Office, Suozzi, Curtis, the Nassau County Department of Social Services and Imhof conspired to deny her the right to make and enforce contracts "because of [her] race not being of Caucasian decent as [her] predecessors," *see* Amended Complaint at ¶ 51;
>
> (4) the Nassau County District Attorney's Office and Rice conspired to subject her to criminal investigation notwithstanding the fact that the older vendors who were Caesarian never were investigated, *see* Amended Complaint at ¶ 52; and
>
> (5) the Town, Hand and Visconti conspired to give complaint to New Life Business and Sheila Allen because they had not been required to deal with a training institute in the past that was run by a

person of African American decent, *see* Amended Complaint at ¶ 52

However, notwithstanding the fact that Allen has sufficiently pled the existence of an agreement to discriminate, "Section 1981 cannot form the basis of a conspiracy under Section 1985(3)." *Tardd v. Brookhaven Nat'l Lab.,* 407 F. Supp. 2d 404, 413 (E.D.N.Y. 2006)(citing *Brown v. Philip Morris, Inc.,* 250 F.3d 789, 805-06 (3d Cir. 2001)). Allen contention is that the defendants conspired to void the contract that was won by her company because she was a double minority business. This is precisely her Section 1981 claim and, thus, the Section 1985 claim must be dismissed.

Moreover, the claim may barred, in part, by the intra-corporate conspiracy doctrine. The intra-corporate conspiracy doctrine posits that the officers, agents and employees of a single corporate or municipal entity, each acting within the scope of his or her employment, are legally incapable of conspiring together. *See Simpson v. Town of Southhampton,* 2007 U.S. Dist. LEXIS 43649 (E.D.N.Y. Jun. 15, 2007). There are only two allegations in the complaint that suggest a conspiracy between the Town defendants and the County defendants. Paragraph 17 in the complaint alleges that the Town, Visconti and Hand "in conjunction with" the Nassau County Department of Social Services, Imhof and Curtis, conspired and retrained students to discredit her. Paragraph 39 alleges that the Town, Hand and Visconti conspired with Imhof and the Department of Social Services to have students write bogus complaints. The remainder of the allegations refer only to agreements that took place within a single municipal entity and are thus, barred.[11]

---

[11]It is unclear from the amended complaint whether the intra-corporate conspiracy doctrine can be applied to the Town defendants. Hand and Visconti have only been sued in their individual capacities, yet the allegations are that they were acting in concert with the Town. *See DeLong v. Soufiane,* 2010 U.S. Dist. LEXIS 2944 *17 (E.D.N.Y. Jan. 14, 2010).

The allegations set forth at paragraphs 17 and 39 are bare allegations of conspiracy discredited by other allegations in the complaint. *See Farbstein v. Hickville Pub. Library,* 2007 U.S. App. LEXIS 26491 *3-4 (2d Cir. Nov. 15, 2007)("bare allegation of conspiracy supported only by an allegation of conduct that is readily explained as individual action is insufficient to defeat motion based on intra-corporate conspiracy doctrine). Throughout the complaint, Allen references only the Town defendants involvement in having students write bogus complaints to the Education Department in order to discredit her business. *See* Amended Complaint at ¶¶ 16, 53. Additionally, Allen's inclusion of Imhof and the County Department of Social Services in the conspiracy claim is unsupported by specific allegations. The complaint also provides no factual allegations to support a finding that the Town and County defendants were involved in a coordinated effort to retrain her students.

Accordingly, the court recommends that the Section 1985 claims be dismissed.

## SUMMARY

For the reasons set forth in this report, the undersigned recommends as follows:

(1)     that the case be dismissed against John Venditto, Mary Curtis, Kathleen Rice, Thomas Suozzi, and John Imhof for improper service pursuant to Fed. R. Civ. P. 12(b)(5);

(2)     that the claims be dismissed against the Nassau County Executive Office, the Nassau County District Attorney's Office, and the Nassau County Department of Social Services and that the County of Nassau, which has not been named, be substituted as the correct party in interest;

(3)     that County defendants' motion to dismiss the Section 1981 claims be granted;

(4)     the Town defendant's motion to dismiss the Section 1981claims be granted with respect to the Town of Oyster Bay, but denied with respect to Hand and Visconti;

(5)     that the Title VI claim be dismissed in their entirety; and

(6)     that the Section 1985 claims be dismissed in their entirety.

## OBJECTIONS

A copy of this Report and Recommendation is being served by the Court on all parties.

Any objections to this Report and Recommendation must be electronically filed with the Clerk of

the Court within 14 days.  Failure to file objections within this period waives the right to appeal the

District Court's Order.  *See* 28 U.S.C. §636 (b) (1); Fed. R. Civ. P. 72; *Beverly v. Walker,* 118 F.3d

900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank,* 84 F.3d 52, 60 (2d Cir. 1996).

Dated:  Central Islip, New York
        February 15, 2011

                                    _____/s/_____
                                    Arlene R. Lindsay
                                    United States Magistrate Judge