# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

№ 09-CV-1520 (JFB)(ARL)

SHEILA ALLEN,

Plaintiff,

VERSUS

COUNTY OF NASSAU, BRIGID HAND, AND JOE VISCONTI,

Defendants.

**MEMORANDUM AND ORDER**
March 10, 2015

JOSEPH F. BIANCO, District Judge:

*Pro se* plaintiff Sheila Allen ("plaintiff") brings this action against defendants Brigid Hand ("Hand") and Joseph Visconti ("Visconti," and collectively with Hand, "defendants"), alleging a claim under 42 U.S.C. § 1981 ("Section 1981") for racial discrimination. Allen alleges defendants failed to honor her contract with the Nassau County Department of Social Services (the "DSS") to provide educational services because she is African American. Plaintiff's Section 1981 claim is her sole remaining claim against any defendant, after the Court dismissed a number of claims and defendants in its March 21, 2011 Memorandum and Order adopting the Report and Recommendation from Magistrate Judge Arlene Lindsay, which granted in part and denied in part the motions to dismiss by defendants Thomas Suozzi ("Suozzi"), Mary Curtis ("Curtis"), Kathleen Rice ("Rice"), John Venditto ("Venditto"), John Imhof ("Imhof"), the Town of Oyster Bay (the "Town"), the Nassau County Executive Office, the Nassau County District Attorney's Office, the DSS, the County of Nassau,[1] Hand, and Visconti. The Section 1981 claim against Hand and Visconti was the one remaining viable claim after the March 21, 2011 Order.

Before the Court now is Hand and Visconti's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons that follow, the motion is granted. Even construing the evidence most favorably to plaintiff as the nonmoving party, the Court finds that plaintiff has not

---

[1] The March 21, 2011 Memorandum and Order dismissed the claims against the Nassau County Executive Office, the Nassau County District Attorney's Office, and the Nassau County Department of Social Services and substituted the County of Nassau as the correct party in interest. The claims against the County were then dismissed.

1

established any genuine issues of material fact with respect to her claim of racial discrimination. Specifically, Allen has failed to present non-conclusory evidence from which a reasonable jury could find that defendants were motivated by discriminatory intent when they investigated complaints of misconduct at plaintiff's school and did not renew her contract.

Therefore, plaintiff's sole remaining claim is dismissed.

I. BACKGROUND

A. Facts

The following facts are taken from the parties' affidavits, exhibits, and respective Local Rule 56.1 statements of facts.[2] Upon consideration of a motion for summary judgment, the Court construes the facts in the light most favorable to the nonmoving party. *See, e.g.*, *Capobianco v. City of New York*, 422 F.3d 47, 50 n.1 (2d Cir. 2005). Unless otherwise noted, where a party's Rule 56.1 statement is cited, that fact is undisputed, or the opposing party has not pointed to any evidence in the record to contradict it.

In 2004, plaintiff owned and operated a private school, New Life Business Institute ("NLBI"). (Defs. 56.1 ¶ 1; Pl. Mem. at 2.) On November 1, 2004, Allen and NLBI entered into a Temporary Assistance for Needy Families Program ("TANF") Training Agreement (the "Agreement") with the Town. (Defs. 56.1 ¶ 1, Ex. 1; Pl. Mem. at 2.) Under the Agreement, NLBI agreed to provide employment training and career development services to individuals specified by the Town's Department of Intergovernmental Affairs Division of Employment Training ("DET"). (Defs. 56.1 ¶ 1, Ex. 1; Pl. Mem. at 2.) The Agreement was to run from November 1, 2004, through June 30, 2006. (Defs. 56.1 ¶ 1, Ex. 1; Pl. Mem. at 2.)

The DET entered into the Agreement under the auspices of its contractual relationship with the DSS, whereby the DSS awarded grants to the DET to procure career development services, employment training, and adult occupation education programs.

---

[2] The Court notes that plaintiff has failed to comply with Local Rule 56.1 in that she has not submitted a Rule 56.1 statement of fact that includes "a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party"; instead, plaintiff's Memorandum in opposition contains a "Response to Statement of Undisputed Material Facts" and a "Response to Statement of Disputed Material Facts" which appear to respond to some aspects of defendants' Rule 56.1 statement. (*See* ECF Dkt. No. 97, at 2-8.) Plaintiff's Memorandum also refers to several exhibits attached thereto, which consist of correspondence between her and the Town of Oyster Bay or the State, and letter testimonials allegedly written by students. Plaintiff's submission, therefore, makes clear which facts she believes to be undisputed and which she disputes. Thus, plaintiff's non-compliance with the Local Rule has not prejudiced the defendants, and the Court, in its discretion, overlooks plaintiff's failure to fully comply. *See Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) ("A district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules.") (citations omitted); *see also Capellupo v. Nassau Health Care Corp.*, No. 06–CV–4922 (JFB), 2009 WL 1705749, at *1 n.3 (E.D.N.Y. June 16, 2009) (excusing defendant's failure to include record citations in Rule 56.1 statement, where appropriate record citations were included elsewhere in attorney's submissions); *cf. Williams v. R.H. Donnelley, Inc.*, 199 F. Supp. 2d 172, 174 n.1 (S.D.N.Y. 2002) (excusing failure to submit statement pursuant to Local Civil Rule 56.1 where the facts were set forth in the party's memorandum of law). Although the parties' respective submissions contain specific citations to the record, the Court cites to defendants' Rule 56.1 statement and plaintiff's memorandum instead of the underlying citation to the record where possible.

(Defs. 56.1 ¶ 2, Ex. 2; Pl. Mem. at 2.) DET's procurement of plaintiff's school as a training provider was done pursuant to the provisions of the federal grant program known as the Workforce Investment Act ("WIA"); the related Workforce Investment Board ("WIB") provided a Comprehensive Three-Year "Local Plan" to the DET that laid out guidelines for how DET could choose service providers, and how to monitor the programming and performance at the providers. (Defs. 56.1 ¶¶ 4-5, Exs. 4, 5; Pl. Mem. at 2-3.) The "Monitoring and Oversight Policy" provided by the WIB to the DET was applicable to classroom training vendor agreements such as the one between the DET and plaintiff's school. (Defs. 56.1 ¶ 5, Ex. 5; Pl. Mem. at 3.) The policy stated, in relevant part, that:

> Formal monitoring visits are made to investigate problems that are detected as a result of counseling visits. If no problems are uncovered as a result of monthly counseling visits, training institutions are monitored one time per year. Prior to each formal monitoring visit, the monitor will determine that the school in compliance with contract requirements has submitted progress reports, problem reports, time sheets, placement, and termination information. During the site review, the monitor will complete the MONITORING REPORT, which contains information regarding areas of compliance and non-compliance, as well as corrective action taken by the training agency. Specifically, participant records will be reviewed to verify participant's period of participation, attendance, counseling matters, as well as information supporting choice of training and participant's progress.
>
> (Defs. 56.1 Ex. 5.)

Between 2004 and 2006, the Town received a total of 38 TANF student clients; 17 were referred to NLBI, while the other 21 were placed in the other two vendor schools.[3] (Defs. 56.1 Exs. 12, 13; Pl. Mem., Ex. 6; Hand Decl. ¶¶ 4-5.) Referrals were made by the DET's employment and training counselors, one of whom was defendant Hand. (Defs. 56.1 Exs. 12, 13; Pl. Mem., Ex. 6; Hand Decl. ¶¶ 4-5.) Hand personally referred nine of those 17 students to NLBI, after interviewing and assessing their skills, abilities, and other issues, and conducted follow-up counseling with the students. (Defs. 56.1 Exs. 12, 13; Pl. Mem., Ex. 6; Hand Decl. ¶¶ 2, 4-5.)

On April 26, 2006, plaintiff sent a letter to defendant Visconti, the Acting Deputy Director for Employment & Training at the DET, claiming that defendant Hand had allegedly precipitated an incident with an NLBI student by disclosing to the student during a counseling session that NLBI had reported the student's poor attendance, and that Hand was allegedly calling other students and advising them that "she was having problems with NLBI." (Defs. 56.1 ¶¶ 7, Ex. 7; Pl. Mem. at 3-4, Ex. 1.) Plaintiff requested that the DET continue to refer students to NLBI under the vendor contract. (Defs. 56.1 ¶¶ 7, Ex. 7; Pl. Mem. at 3-4, Ex. 1.) On May 12, 2006, Visconti sent a response to plaintiff's letter, advising that "all TANF counselors must review progress and attendance reports, as well as, [sic] other

---

[3] Although Hand's declaration states that there were 41 students, it appears from the exhibits that three of the students referred to alternative vendor Hunter Business School, April Tucker, Dina Fribbley, and Dorothea Cooper, had all previously been referred to NLBI and were transferred to Hunter at NLBI's request, because of a complaint, or for another reason. (Defs. 56.1 Exs. 12, 13; Pl. Mem., Ex. 6). Therefore the actual number of students appears to be 38, as opposed to 41.

3

pertinent documents to ensure a participant's success. Students will be conferenced regarding any problems, and the school will be consulted, as well. I am sure that you can understand why this office takes seriously any complaints or issues presented from either the student or school, and will remain committed to resolving all infractions." (Defs. 56.1 ¶ 8, Ex. 8; Pl. Mem. at 4-5, Ex. 2.) Visconti also stated that he was "certainly not saying that Ms. Hand was not concerned about the accusations made by students about your school," but that she would continue to refer student clients to the vendor schools based on their best interests, and that any issues at NLBI could be resolved via discussion and a corrective action plan. (Defs. 56.1 ¶ 8, Ex. 8; Pl. Mem. at 4-5, Ex. 2.) Plaintiff did not respond to this letter or submit a corrective action plan. (Visconti Decl. at ¶ 8.)

On May 10, 2006, the DET sent a letter to plaintiff notifying her that, during May 2006, the DET intended to conduct its yearly site visit at NLBI in accordance with the WIA and its Monitoring and Oversight Policy. (Defs. 56.1 ¶ 9, Ex. 9; Pl. Mem. at 5, Ex. 3.) The letter, signed by Visconti, explained that the monitor would "ask to sit in on a class, and to interview current clients attending the school. The monitor will also ask to review a sample of participant records to verify participants' period of participation, attendance, and progress, and will discuss follow-up information for all Oyster Bay Participants within the past year." (Defs. 56.1, Ex. 9; Pl. Mem., Ex. 3.)

On May 17, 2006, the DET sent plaintiff a letter notifying her that several students had lodged written complaints about the NLBI. (Defs. 56.1 ¶ 10, Ex. 10; Pl. Mem. at 6, Ex. 4.) The letter stated that the DSS had advised that the complaints and the students' identities should remain confidential, but provided a compiled list of allegations made by the complaints. (Defs. 56.1 ¶ 10, Ex. 10; Pl. Mem. at 6, Ex. 4.) Four complaints had actually been made during the preceding weeks by students Dorothea Cooper (May 1, 2006), Candice Davis (May 2, 2006), Donilla Johnson (May 3, 2006), and April Tucker (May 10, 2006). (Defs. 56.1 ¶ 11, Ex. 11; Pl. Mem. at 6-7.) Hand and the other DET counselor, Karen Jones, had started receiving oral complaints from students about NLBI in April 2006; Visconti advised them to have students write out the complaints so that the issues could be resolved, resulting in the four complaints and the letter to NLBI. (Hand Decl. ¶¶ 9-11; Visconti Decl. ¶¶ 5-6.)

The DET site visit was conducted on May 17, 2006, and the Monitoring Report was sent to NLBI on June 1, 2006. (Defs. 56.1 ¶ 14, Ex. 14; Visconti Decl. ¶ 11.) The Monitoring Report evaluated performance metrics and reviewed topics of student complaints, and analyzed with respect to each where NLBI was compliant and non-compliant with the WIA, the TANF, and the Agreement. (Defs. 56.1 ¶ 14, Ex. 14.) The Monitoring Report suggested corrective action for any non-compliant area (*e.g.*, with respect to the monitor's observation that the students' timesheet records did not reflect lateness or absences, "The school timesheets must reflect absences and lateness. The purpose of these timesheets is not only to pay tuition, but also to calculate day care and transportation benefits for Jobs Program participants. Since students receive day care and transportation payments during the internship period and school personnel approve the timesheets it is the school's responsibility to make sure that the timesheets are accurate during this period as well.") (Defs. 56.1 Ex. 14.)

Plaintiff did not respond to either the letter detailing the complaints or the request for a corrective action plan in response to

4

the Monitoring Report. (Visconti Decl. ¶¶ 10-11.) The term of the Agreement between plaintiff's school and the Town expired on June 30, 2006. (Visconti Decl. ¶ 12.) The Town did not negotiate an extension of the Agreement beyond June 30, 2006. (Defs. 56.1 ¶ 1, Ex. 1; Pl. Mem. at 2; Visconti Decl. ¶ 12.)

B. Procedural History

Plaintiff commenced this action against Suozzi, Curtis, Rice, Venditto, and Imhof on April 10, 2009. By leave of the Court, plaintiff filed an amended complaint on January 6, 2010, which added as defendants Hand, Visconti, the Nassau County Executive Office, the Nassau County District Attorney's Office, the Town, and the DSS. Specifically, her amended complaint alleged that some or all of the defendants (1) failed to honor her contract because of her race and gender, in violation of 42 U.S.C. § 1981 and Title VI of the Civil Rights Act of 1964; (2) conspired to cancel the contract because of her race, in violation of 42 U.S.C. § 1985; (3) committed tortious interference with her contract, in violation of 42 U.S.C. § 1981; (4) deprived her of procedural due process by refusing to execute her contract, in violation of 42 U.S.C. § 1983; (5) discriminated against her because of her race, in violation of 42 U.S.C. §§ 1981 and 1985; (6) neglected to prevent conspiratorial wrongs, in violation of 42 U.S.C. §§ 1985(3) and 1986; and (7) abused power, in violation of 42 U.S.C. § 1983.

The Town of Oyster Bay, Venditto, Hand, and Visconti (the "Town defendants") and the Nassau County Executive Office, Suozzi, Curtis, the D.A.'s Office, Rice, the DSS, and Imhof (the "County defendants") moved to dismiss the amended complaint, and the Court referred the motions to Magistrate Judge Arlene Lindsay for review.

On February 15, 2011, Magistrate Judge Lindsay issued her Report and Recommendation ("R&R"), which recommended the following: (1) that the case be dismissed against Venditto, Curtis, Rice, Suozzi, and Imhof for improper service, pursuant to Fed. R. Civ. P. 12(b)(5); (2) that all claims be dismissed against the County Executive Office, the D.A.'s Office, and DSS, and that the County of Nassau (the "County") be substituted as the correct party in interest; (3) that the County defendants' motion to dismiss the Section 1981 claims be granted; (4) that the Town defendants' motion to dismiss the Section 1981 claims be granted with respect to the Town of Oyster Bay, but denied with respect to defendants Hand and Visconti; (5) that the Title VI claim be dismissed in its entirety; and (6) that the Section 1985 claims be dismissed in their entirety. The Court adopted the R&R in its entirety on March 21, 2011. As the result of the Court's Order, only the Section 1981 claims against Hand and Visconti survived the motions to dismiss.

Over two years after the Court issued its March 21, 2011 Order, plaintiff moved to file a second amended complaint ("SAC") on May 24, 2013. The SAC alleged the same seven causes of action as did the amended complaint. In fact, the allegations in the SAC were exactly the same as those set forth in the amended complaint, except that the SAC named only the County, Hand, and Visconti as defendants. In effect, the SAC substituted the County for all defendants listed in the amended complaint, except Hand and Visconti. That substitution did not cure the defects already identified in the March 21, 2011 Order, therefore in an Order issued on December 23, 2013, the Court denied plaintiff's motion to file the SAC.

On August 29, 2014, after the completion of discovery, defendants Hand

and Visconti filed the instant motion for summary judgment. Plaintiff filed her opposition on November 7, 2014, and defendants filed their reply on November 21, 2014. This matter is fully submitted, and the Court has fully considered all submissions of the parties.

## II. STANDARD OF REVIEW

The standard for summary judgment is well settled. Pursuant to Federal Rule of Civil Procedure 56(a), a court may grant a motion for summary judgment only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Gonzalez v. City of Schenectady*, 728 F.3d 149, 154 (2d Cir. 2013). The moving party bears the burden of showing that he is entitled to summary judgment. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The court "'is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments.'" *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (quoting *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996)); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party "'must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*.'" *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (alteration and emphasis in original) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). As the Supreme Court stated in *Anderson*, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." 477 U.S. at 249-50 (citations omitted). Indeed, "the mere existence of *some* alleged factual dispute between the parties alone will not defeat an otherwise properly supported motion for summary judgment." *Id.* at 247-48 (emphasis in original). Thus, the nonmoving party may not rest upon mere conclusory allegations or denials but must set forth "'concrete particulars'" showing that a trial is needed. *R.G. Grp., Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (quoting *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978)). Accordingly, it is insufficient for a party opposing summary judgment "'merely to assert a conclusion without supplying supporting arguments or facts.'" *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (quoting *Research Automation Corp.*, 585 F.2d at 33).

## III. DISCUSSION

Plaintiff claims that Hand and Visconti committed various adverse actions against her and her Company because of their racial

animus toward her, in violation of Section 1981. "To establish a claim under § 1981, a plaintiff must allege facts in support of the following elements: (1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute (i.e., make and enforce contracts, sue and be sued, give evidence, etc.)." *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993); *Albert v. Carovano*, 851 F.2d 561, 571-72 (2d Cir. 1998) ("Essential to an action under Section 1981 are allegations that the defendants' actions were purposefully discriminatory, and racially motivated."). Among the activities enumerated in the statute is the ability to make and enforce contracts, which "includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(a)-(b).

In this case, defendants do not dispute that plaintiff is a member of a racial minority, but argue that plaintiff has not established a *prima facie* case of racial discrimination, as is her duty under *McDonnell-Douglas Corp. v. Green*. 411 U.S. 792, 800 (1973) (plaintiff must first present facts sufficient to establish a *prima facie* case that defendants discriminated on the basis of race). The Court agrees. While the burden of establishing a *prima facie* case is relatively low, it is well-established that a plaintiff who can offer nothing more than his or her own conclusory assertions in support of an allegation of racial discrimination cannot survive a motion for summary judgment. *See, e.g.*, *Yusuf v. Vassar College*, 35 F.3d 709, 713-14 (2d Cir. 1994) (a plaintiff alleging racial discrimination must do more than "recite conclusory assertions" to support the claim, and a claim supported only by personal belief without "specific factual support" is insufficient to withstand summary judgment); *Evans-Gadsden v. Bernstein Litowitz Berger & Grossman, LLP*, 491 F. Supp. 2d 386, 396 (S.D.N.Y. 2007) (In support of Section 1981 claim, "Plaintiff can offer nothing other than her own self-serving testimony, based on hearsay, to support her position. . . . Given Plaintiff's total lack of support for the racial discrimination allegation, this Court concludes that she has failed to make even a prima facie showing of discrimination as to her termination."), *aff'd sub nom.*, *Gadsden v. Bernstein Litowitz Berger & Grossman*, 323 F. App'x 59 (2d Cir. 2009); *Edwards v. City of New York*, No. 03 CIV. 9407 (PAC), 2005 WL 3466009, at *15 (S.D.N.Y. Dec. 19, 2005) (granting defendant's motion for summary judgment on Section 1981 claim because "plaintiff asks this Court to find, merely from his own scant and conclusory testimony, that plaintiff's termination arose under circumstances giving rise to an inference of discrimination") (citing *Richardson v. Newburgh Enlarged Sch. Dist.*, 984 F. Supp. 735, 744 (S.D.N.Y. 1997)); *Lee v. ITT Standard*, 268 F. Supp. 2d 315, 333 (W.D.N.Y. 2002) *report and recommendation adopted in part sub nom. Estate of Lee v. ITT Standard*, 268 F. Supp. 2d 356 (W.D.N.Y. 2003) ("In particular, on issues where the non-moving party has the burden of proof, the Plaintiff must provide more than conclusory and self-serving statements in affidavits to avoid summary judgment.") (citation omitted).

Here, plaintiff presents no evidence of racial animus by Hand or Visconti aside from the conclusory statements she offers in

her Memorandum in opposition.[4] Such statements include:

- "[A student was coopted into making a complaint against NLBI] in retaliation to Sheila Allen and the New Life Business Institute for challenging the no bid vendor process and because I was of African American decent [sic]. None of the other vendors or contracted training schools were of African American Decent [sic]." (Pl. Mem. at 4.)

- "None of the other 2 vendors [were subjected to the yearly monitoring per WIA policy], and the Town of Oyster Bay's Department of Intergovernmental Affairs Division of Employment Training did not do it previously and I was in agreement with them from 2004. . . . There was nothing mentioned about the complaint during [the May 17, 2006 monitoring visit]. They went from room to room finding faults and asking for complaints from students. This visit was done in retaliation of the complaint made and so that they did not have to honor my contract because of my race." (Pl. Mem. at 5.)

- "New Life Business Institute communicated with the [DET] on a daily basis and if we were not in compliance the agency would have known back in 2004. This tactic was created to exhibit racial harassment, ethnic intimidation, discrimination, and to subject Sheila Allen and New Life Business Institute to a course of racially hostile conduct by the County of Nassau, The Town of Oyster Bay, Mr. Joseph Visconti, and Mrs. Bridgette [sic] Hand." (Pl. Mem. at 8.)

- "The records [sic] replete with evidence that the Town of Oyster Bay, Nassau County, and Joseph Visconti and Bridgette [sic] Hand engaged in a pattern or practice of harassment and discrimination against African American Vendors and Contracts." (Pl. Mem. at 9.)

In short, plaintiff alleges that, because she was African-American and the owners of other vendor schools are not, defendants: (a) coopted students into making complaints against her and NLBI; and (b) did not honor the contract between DET and NLBI.[5]

---

[4] Plaintiff failed to submit a signed and sworn affidavit in support of her opposition. However, even if these statements were in an affidavit, they still would be conclusory and unsupported by admissible evidence.

[5] As defendants note in their reply, plaintiff in her memorandum for the first time alleges that defendants retaliated against her for sending the April 26, 2006 letter complaining about Hand. This claim, in addition to being unsupported by any facts in the record, is not part of plaintiff's remaining claim under Section 1981, and the Court declines to accept a new theory of liability at this late stage in the litigation. *See Levion v. Societe Generale*, 822 F. Supp. 2d 390, 399 n.4 (S.D.N.Y. 2011) ("Indeed, '[b]ecause a failure to assert a claim until the last minute will inevitably prejudice the defendant, courts in this District have consistently ruled that it is inappropriate to raise new claims for the first time in submissions in opposition to summary judgment.'" (quoting *Insinga v. Cooperatieve Centrale Raiffeisen Borenleenbank B.A.*, No. 03 Civ. 7775 (RJH), 2005 WL 2345293, at *10 (S.D.N.Y. Sept. 20, 2005))), *aff'd*, 503 F. App'x 62 (2d Cir. 2012). In any event, there is no evidence to support this claim.

Allen, however, offers no factual support for any of her allegations. In fact, the exhibits supplied with plaintiff's memorandum entirely match the exhibits supplied by defendants, with the sole addition of a tranche of testimonial letters allegedly written by NLBI students. (*See* Pl. Mem. Ex. 5.) Were such documents to be considered as evidence, the Court finds, upon a review of the letters, that not a single one makes even a reference to racial discrimination by defendants—only that the monitor or a DET counselor had asked some of the students if they had encountered any problems at NLBI. Plaintiff has, therefore, not offered even a scintilla of evidence that the four written complaints against NLBI were coerced by defendants.

Moreover, the undisputed evidence supplied by both parties undermines any possible inference of racial discrimination. First, the Agreement between the DET and plaintiff/NLBI was to expire at the end of June 2006. (Defs. 56.1 ¶ 1, Ex. 1; Pl. Mem. at 2.) Over the life of the contract, 17 students [6] were referred to NLBI, while Hunter Business School received 20 (not including the three transfers from NLBI) and Access Careers received one. (Defs. 56.1 Exs. 12, 13; Pl. Mem. Ex. 6.) The DET counselors, including defendant Hand, counseled students to enroll at NLBI as late as April 2006. (Defs. 56.1 Exs. 12, 13; Pl. Mem. Ex. 6 (reflecting that Hand was the counselor for students Dina Fribbley and Tiasia Ford, who were referred for enrollment at NLBI on April 10 and 11, 2006, respectively).) Thus, the undisputed history of student referrals reflects that NLBI received referrals for nearly half of the eligible students, and that Hand and the DET referred students to NLBI up until close to the end of the Agreement. Furthermore, nowhere in the evidence supplied by either party are there facts regarding the racial composition of the owners or staff of the other vendor schools to support plaintiff's allegation of a "no bid vendor process" favoring non-African American schools. There is, in fact, no evidence whatsoever about the history of DET contracts or the allegedly discriminatory "bidding" process.

The communications submitted by both parties as evidence—comprising plaintiff's April 26, 2006 letter to Visconti, and the DET's letters of May 10, May 12, and May 17, 2006—also do not support an inference of racial discrimination. (Defs. 56.1 Exs. 7-10; Pl. Mem. Exs. 1-4.) Not only does plaintiff in her own letter not raise the issue of racial animus toward her or NLBI because she was African-American, but the letters from Visconti/the DET clearly disclose the issues raised by students with the counselors, and repeatedly offer to work with her on a corrective action plan to resolve the complaints.

The Court, therefore, cannot discern how exactly the DET did not "honor" plaintiff's contract, and plaintiff does not provide further detail to her allegation. As discussed above, the uncontroverted evidence demonstrates that the investigation of complaints and the monitor's visit to NLBI were duties of the DET under the WIB's Monitoring and Oversight Policy that governed the Agreement. (Defs. 56.1 ¶ 5, Ex. 5; Pl. Mem. at 3.) Plaintiff in opposition appears to argue that she had not been monitored before May 2006, and/or that the other vendor schools were not monitored (*see* Pl. Mem. at 5); however, she again offers no factual evidence other than her own conclusory assertions as support, and to the extent plaintiff is questioning the DET's investigation of multiple complaints made

---

[6] *See supra* n.3.

against the school, there is no evidence that the decision to investigate those complaints was based upon racial animus.

If plaintiff is arguing that there was a violation because the Agreement was not renewed after it expired on June 30, 2006, then a claim under Section 1981 on this ground also fails because Allen has not provided any evidence plausibly demonstrating the defendants did not renew because of racial animus against her. Indeed, the evidence reflects that defendant Visconti and the DET repeatedly offered to work with plaintiff on a corrective action plan to remediate the complaints and the violations found by the monitor, and plaintiff does not dispute that she took no action whatsoever to respond to those offers.

In sum, plaintiff's evidence supporting her Section 1981 claim amounts to nothing more than conclusory assertions without specific factual support. Defendants, on the other hand, have shown that the uncontroverted documentary evidence—especially the Agreement, the Monitoring and Oversight Policy, and the history of student referrals—supports their argument that their actions were not discriminatory and fell within their rights and duties to monitor the vendor schools, investigate complaints.[7] Given this uncontroverted evidence, no rational jury could find that defendants' actions were motivated by discriminatory intent. *See Yusuf*, 35 F.3d at 713-14.

For these reasons, plaintiff's claim must be dismissed.

---

[7] Defendants argue in the alternative that they are entitled to qualified immunity. As set forth above, the Court concludes that plaintiff's claim is without merit, and thus, the Court need not address whether defendants are entitled to qualified immunity as well.

IV. CONCLUSION

For the reasons set forth herein, the Court grants defendants' motion for summary judgment.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: March 10, 2015
　　　　Central Islip, NY

\* \* \*

Plaintiff proceeds *pro se*. Defendants Bridgette Hand and Joe Visconti are represented by Karen J. Underwood, Office of the Town Attorney, Town of Oyster Bay, 54 Audrey Avenue, Oyster Bay, NY 11771.